UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------------x
1199SEIU UNITED HEALTHCARE WORKERS EAST,

                    Plaintiff,                              ECF CASE

        -against-                                          No. 2:21-cv-10472


CRANFORD REHAB AND NURSING CENTER
and REHAB AT RIVER'S EDGE,

                    Defendants.
---------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION IN AID OF ARBITRATION

Katherine H. Hansen
William S. Massey
Gladstein, Reif & Meginniss, LLP
39 Broadway, Suite 2430
New York, New York 10006
(212) 228-7727
khansen@grmny.com
wmassey@grmny.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................................1

FACTS......................................................................................................................1

ARGUMENT........................................................................................................... 3

    A. The Court Has Authority To Enjoin Defendants From Altering The
       Status Quo Pending Arbitration ........................................................... 3

    B. The Dispute Concerning the Sale Is Arbitrable ..................................... 5

    C. The Union Can Demonstrate a Likelihood of Success on the Merits.................. 6

    D. Irreparable Injury Will Result If the Sale Is Not Enjoined .................................8

    E. The Balance of Hardships Favor Injunctive Relief.............................................11

CONCLUSION.........................................................................................................13

1

**TABLE OF AUTHORITIES**

Page(s)

CASES:

*Aluminum Workers Local 215 v. Consolidated Aluminum Corp.*, 696 F.2d
    437 (6th Cir. 1982) ...................................................................................... 5

*Auto Workers v. Exide Corp.*, 688 F. Supp. 174 (E.D. Pa. 1988),
    *aff'd mem.*, 857 F.2d 1464 (3d Cir. 1988) ...................................................13

*Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235 (1970) ................................. 4

*Buffalo Forge* [*v. Steelworkers*], 428 U.S. 397 (1976) ....................................................... 7

*Independent Oil & Chemical Workers v. Procter & Gamble Mfg. Co.*, 864
    F.2d 927 (1st Cir. 1988) .......................................................................... 5

*Lever Bros. Co. v. Chemical Workers Local 217*, 554 F.2d 115 (4th Cir.
    1976)........................................................................................................ 5, 6

*Machinists Local Lodge 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.
    1981) ................................................................................................. *passim*

*Nursing Home Union 434 v. Sky Vue Terrace, Inc.*, 759 F.2d 1094 (3d Cir.
    1985) ................................................................................................. *passim*

*Oil, Chemical & Atomic Workers Local 2-286 v. Amoco Oil Co.*, 885 F.2d
    697 (10th Cir. 1989) .................................................................................. 5

*Postal Workers v. United States Postal Service*, 766 F.2d 715 (2d Cir.
    1985), *cert. denied*, 475 U.S. 1046 (1986) ...................................................... 5

*Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960) ............................. 4

*Steelworkers v. Enterprise Wheel Car Corp.*, 363 U.S. 593 (1960) ................................ 4

*Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273 (3d Cir. 1979) ...........................13

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ............................ 5

STATUTES:

Labor Management Relations Act, 1947, 61 Stat. 136, § 301 (1947)
    29 U.S.C. § 185 ...........................................................................................1

Norris-LaGuardia Act, 47 Stat. 70, § 4 (1932), 20 U.S.C. § 104 ..................................... 6

## Introduction

Plaintiff 1199SEIU United Healthcare Workers East ("Plaintiff" or "the Union") brings this action pursuant to section 301 of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185, and the parties' collective bargaining agreement, to restrain Defendants from taking certain actions that would deprive the arbitrator of the ability to award an adequate remedy for Defendants' violation of the collective bargaining agreement, and to maintain the status quo ante pending resolution of the dispute by the arbitrator.

## Facts

The Union represents licensed practical nurses, certified nursing assistants, housekeeping, dietary and laundry employees employed by defendant Cranford Rehab and Nursing Center ("Cranford"), a nursing home in Cranford, New Jersey.  Declaration of Katherine H. Hansen executed April 29, 2021 ("Hansen Decl."), ¶ 2.  The Union also represents certified nursing assistants, housekeeping, dietary, and laundry employees employed by Defendant Rehab at River's Edge ("RRE"), a nursing home in Raritan, New Jersey.  Hansen Decl., ¶ 3.

Cranford and RRE (hereinafter collectively, "Defendants" or "Employers") are parties to a collective bargaining agreement ("CBA') with the Union that establishes the wages, hours and other terms and conditions of employment of the workers employed at the Cranford and RRE facilities, including, among other things, comprehensive health insurance, pension and paid sick leave.  Hansen Decl., ¶¶ 4-5.  Article 32  of the parties' 2008-2013 CBA, which remains in effect by operation of successor memoranda of agreement continuing its terms (*see* Hansen Decl. ¶¶ 5-8), requires the Employers to,

3

*inter alia*, condition any sale, transfer, or assignment on the buyer's agreement to assume the CBA and retain all employees.  Hansen Decl., ¶ 9.

On the evening of April 28, 2021, the Union received notice from the attorney representing prospective new operators of the Cranford and RRE facilities, Lou Capozzi ("Capozzi"), Esq., that the nursing homes were to be taken over "in the near future" and that the new operators would not be assuming the terms and conditions of the collective bargaining agreement or retaining all bargaining unit employees.  Hansen Decl., ¶ 14. Capozzi's letters set forth the "Initial Terms and Conditions of Employment" the new operators intended to implement upon assumption of operations.  Hansen Decl., ¶ 14. The terms and conditions of employment the prospective operators intend to implement would result in substantial losses of pay and benefits for front-line health care workers at issue.

The takeover date appears to be as early as May 1, 2021.  Hansen Decl., ¶ 11.   The takeover came as a shock and surprise given that the Employers had previously advised the Union that there was be a mere change in management on that date, and the new management was looking to have a "seamless transition with the current employees." Hansen Decl., ¶ 11.   The Union had believed there would be no sale, and sent an email message on April 14, 2021 to Defendants' corporate counsel, Noah Siegel, who responded that same date by replying, "Understood, I'm glad that was cleared up." Hansen Decl., ¶ 12.

Upon receiving Capozzi's letters, the Union, by its counsel Katherine H. Hansen ("Hansen"), immediately sent an email to Noah Siegel, Corporate Counsel for Defendants, advising that a sale, transfer or assignment of the nursing homes without requiring the new operators to assume the terms and conditions of the collective

4

bargaining agreement and retain all bargaining unit employees was a clear violation of the successorship provision of the CBA.   Hansen Decl., ¶ 15.   The Union further demanded that an emergency expedited arbitration hearing be held to resolve the dispute over the sale, which appeared to be imminent.   Hansen Decl., ¶ 16.   The Union forthwith filed an arbitration demand with the named contract arbitrator, Timothy Brown, and Arbitrator Brown offered to hold a hearing on April 29, 2021.   After numerous requests to the Employers went unanswered, the Arbitrator issued an order convening an arbitration hearing to be held on April 30, 2021 at 12 p.m. via Zoom. Hansen Decl., ¶¶ 17-18.

As explained in greater detail below, Defendants' contemplated sale or assignment of the nursing homes violates the collective bargaining agreement because it does not require the prospective new operators to assume the terms and conditions of the collective bargaining agreement or retain all bargaining unit employees.   The CBA requires the Employers to arbitrate this dispute and empowers the arbitrator to issue an award that is "final and conclusively determine[s] the matter."   Hansen Decl., ¶ 20.

Here, the arbitration hearing is scheduled to take place on April 30, 2021 and the Union will ask that an award issue shortly thereafter. Effectuation of the sale prior to the arbitrator's issuance and effectuation of a final award would:  deprive the arbitrator of the ability to order an adequate remedy for the contract violation, deprive the Union and the healthcare workers of their contractual rights to have the dispute decided by an arbitrator, deprive the Union and the workers of their contractual benefits, and result in losses of employment, health insurance, paid sick leave, job security, and other benefits to work the workers are contractually entitled.   The Union therefore requests interim

injunctive relief to protect the process of arbitration pursuant to the collective bargaining agreement.

## ARGUMENT

**THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION REQUIRING THE EMPLOYERS TO MAINTAIN THE STATUS QUO AND REFRAIN FROM EFFECTUATING THE SALE UNTIL THE DISPUTE HAS BEEN FULLY RESOLVED BY THE ARBITRATOR.**

**A.   The Court Has Authority To Enjoin Defendants From Altering The Status Quo Pending Arbitration.**

For the past sixty years, few principles of labor law have been as well settled as the requirement that parties to a collective bargaining agreement providing for compulsory arbitration submit to arbitration all disputes arguably covered by the agreement.  This principle, set forth by the Supreme Court in the series of cases known as the *Steelworkers Trilogy*, *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers v. Enterprise Wheel Car Corp.*, 363 U.S. 593 (1960), is fundamental to the national labor policy favoring resolution of labor disputes through arbitration, rather than through strikes and litigation.

An important and similarly well-established corollary of this principle is that the courts may issue injunctions in aid of arbitration pending resolution through arbitration of an arbitrable dispute.  This principle was enunciated in *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235 (1970), in which the Supreme Court ruled that a strike over an arbitrable dispute could be enjoined pending resolution of the dispute through

arbitration, notwithstanding the anti-injunction provisions of the Norris-LaGuardia Act.[1]  Injunctions against employers to maintain the status quo in a labor dispute pending arbitration, often known as reverse *Boys Markets* injunctions, have also been consistently recognized as a proper exercise of judicial authority.  *See Oil, Chemical & Atomic Workers Local 2-286 v. Amoco Oil Co.*, 885 F.2d 697 (10th Cir. 1989); *Independent Oil & Chemical Workers v. Procter & Gamble Mfg. Co.*, 864 F.2d 927 (1st Cir. 1988); *Postal Workers v. United States Postal Service*, 766 F.2d 715 (2d Cir. 1985), *cert. denied*, 475 U.S. 1046 (1986); *Nursing Home Union 434 v. Sky Vue Terrace, Inc.*, 759 F.2d 1094 (3d Cir. 1985) (hereinafter referred to as *Sky Vue*); *Aluminum Workers Local 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir. 1982); *Machinists Local Lodge 1266 v. Panoramic Corp.*, 668 F.2d 276 (7th Cir. 1981); *Lever Bros. Co. v. Chemical Workers Local 217*, 554 F.2d 115 (4th Cir. 1976).

"To establish that an order enjoining employer conduct is necessary to ensure that the arbitral process will not be frustrated, the party seeking the injunction must prove not only that the underlying disputes are arbitrable, but that the traditional requirements of injunctive relief – probability of success on the merits, irreparable injury, and a balance of the hardships – support the award." *Sky Vue,* 759 F.2d at 1098. All of these requirements are satisfied in the instant case.

### B.      The Dispute Concerning the Sale Is Arbitrable.

The dispute between the parties over whether the nursing homes may be sold, transferred or assigned without requiring the new operator to assume the terms and conditions of the collective bargaining agreement and retain all bargaining unit

---

[1]  47 Stat. 70, § 4 (1932), 20 U.S.C. § 104.

employees is indisputably arbitrable.  Article 11 of the parties' CBA provides that any

"dispute with regard to the application, interpretation or performance of an express

term or condition of the Agreement" is subject to the grievance and arbitration

procedure.

Article 32 of the 2008-2013 CBA provides:

> This Agreement shall be binding upon the parties hereto, their successors and assigns, and shall apply to all establishments now or hereafter owned, operated, or controlled by the Employer. If the Employer shall sell, transfer, or otherwise dispose in whole or in part of its business, merge or consolidate it with that of any other person, firm or corporation, the Agreement by which such sale, transfer, assignment, subletting, disposition, merger or consolidation is made must provide that the person, firm or corporation thereafter to operate the business shall assume all of the terms and conditions of this Agreement, that is shall retain in its employ all employees then employed in the business; that the person, firm or corporation, that thereafter operates the business shall be personally responsible for all unpaid wages, all fund payments, vacations, holidays, sick leave and all other monetary items.  The Employer shall give prior notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc of the operation covered by this Agreement, or any part thereof.  Such notice shall be in writing and a copy served upon the Union at the time the seller, transferor or lessor executes a contract or transaction as herein described.  The Union shall also be advised of the exact nature of the transaction, excluding financial details.

Hansen Decl., ¶ 19.

The instant dispute pertains to whether Defendants have violated Article 32 by

failing to require the prospective new operators of the facilities to assume the collective

bargaining agreement with the Union and retain all bargaining unit employees.  The

planned takeover of the Cranford and RRE facilities by the new operators, who have

announced their intention not to assume the collective bargaining agreement or retain

all bargaining unit employees demonstrates that a colorable dispute has arisen over

Defendants compliance with the CBA.  That the dispute is arbitrable could not be more clear.

### C. The Union Can Demonstrate a Likelihood of Success on the Merits.

The U.S. Court of Appeals for the Third Circuit has held, in agreement with other courts of appeals that have considered the question, that "to meet its burden of showing a probability of success on the merits in the context of a *Boys Markets* injunction, the union need only show that the position it takes is 'sufficiently sound to prevent the arbitration from being a futile endeavor.'" *Sky Vue*, 759 F.2d at 1098 n.3 (quoting *Machinists Local Lodge 1266 v. Panoramic Corp.*, 668 F.2d at 284-85, and *Lever Bros. Co. v. Chemical Workers Local 217*, 554 F.2d at 120).  The lower threshold is required by the principle established in the *Steelworkers Trilogy* and its progeny that all disputes even arguably covered by the arbitration provision of a collective bargaining agreement be resolved by the arbitrator.  As the court explained in *Sky Vue*, "[t]o hold the union to a stricter standard of proof would intrude significantly on the arbitrator's function, and result in the type of judicial preemption of the arbitral process condemned by the Court in *Buffalo Forge* [*v. Steelworkers*], 428 U.S. 397, 410-11  (1976)."  With this standard in mind, we turn to the violation of the collective bargaining agreement that will be presented to the arbitrator.

The contractual successorship provision contained in Article 32 reprinted above expressly provides that "[i]f the Employer shall sell, transfer or otherwise dispose in whole or in part of its business [. . .] the Agreement by which such sale, transfer, assignment, subletting, disposition, merger or consolidation is made must provide that the person, firm or corporation thereafter to operate the business shall assume all of the

terms and conditions of this Agreement."  The undisputed facts concerning the pending sale establish the violation that will be presented to the arbitrator: the Employers have agreed to sell, transfer or otherwise dispose of the nursing homes without requiring the companies taking over to assume the collective bargaining agreement or retain all bargaining unit employees. For the arbitrator not to rule for the Union on the merits would be very difficult.

The Union has clearly established its likelihood of success on the merits, and even more clearly that it has satisfied the lower standard applicable in the instant case: that its position "is 'sufficiently sound to prevent the arbitration from being a futile endeavor.'" *Sky Vue*, 759 F.2d at 1098 n.3.

### D. Irreparable Injury Will Result If the Sale Is Not Enjoined.

In *Machinists Local Lodge 1266 v. Panoramic Corp.*, the Seventh Circuit decision cited with approval repeatedly in the Third Circuit's decision setting forth the requirements for a reverse *Boys Markets* injunction, *see Sky Vue*, 759 F.2d at 1098, the court explained the meaning of the irreparable injury requirement in the *Boys Markets* context:

> Irreparable injury means not simply any injury resulting from a breach of contract that would not be fully redressed by an arbitral award, but rather "injury so irreparable that a decision of the (arbitration) Board in the union('s) favor would be but an empty victory." Thus, we follow what we understand to be the practice of most courts and focus into a single concept the twin ideas of irreparable injury and frustration of arbitration. An injunction in aid of arbitration is appropriate, therefore, only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration.

*Panoramic Corp.*, 668 F.2d at 285-86 (citation and footnote omitted).

10

At issue in *Panoramic* was a provision of the collective bargaining agreement that made the agreement binding on Panoramic's "successors and assigns." The dispute arose when Panoramic decided to sell the division in which the bargaining unit members were employed, and the buyer, in response to the union's inquiry, "reported that it had not agreed to assume the obligations of the collective bargaining agreement." *Id.* at 278. The union filed a grievance asserting that the "successors" clause required Panoramic to require, as a condition of sale, that the buyer assume the collective bargaining agreement. It then sought "a preliminary injunction to restrain Panoramic, pending arbitration, from completing the sale to [the buyer] or any other person without first requiring the transferee to assume the labor agreement." *Id.* at 279.

The district court granted the injunction and the court of appeals affirmed. The court of appeals held that if the sale had been permitted to go through, it "would have resulted in frustration of the arbitral process and would have threatened irreparable injury to the Union and its members." *Id.* at 286. Citing a "wide range of cases" reaching the same conclusion, the court explained:

> Consummation of the sale before an arbitrator had an opportunity to rule on the Union's contention that the sale violated the labor agreement would have presented the arbitrator with a fait accompli, leaving him without any real power to award an adequate remedy in the event that the Union's claim was sustained.

*Id.* (citations omitted).

Panoramic argued that if the sale were consummated before the arbitrator could rule whether it violated the labor agreement, the arbitrator "could, after finding for the union, have ordered Panoramic to undo or rescind the completed sale." *Id.* at 287. The court rejected that argument, explaining:

11

> We are much less confident than Panoramic that an arbitrator possesses the authority to order a rescission of such a contract of sale after it has been consummated. Even if such authority existed, an arbitrator would likely be extremely reluctant to enter a rescission order given the practical difficulties of implementing it.

*Id.*

Here, as in *Panoramic*, the Employers stand poised to dispose of their businesses in clear violation of the successorship provision of the parties' labor agreement. As the court explained in *Panoramic*,"[c]onsummation of the sale before an arbitrator ha[s] an opportunity to rule on the Union's contention that the sale violate[s] the labor agreement would [present] the arbitrator with a fait accompli, leaving him without any real power to award an adequate remedy." *Id.* An arbitrator's decision in the Union's favor "would be but an empty victory," and the resulting "frustration of arbitration" constitutes irreparable injury for purposes of enjoining the sale. *Id.* at 285-86.

Thus, in *Sky Vue*, the leading Third Circuit decision, the court found irreparable harm, explaining that the employer action sought to be enjoined – dissolution and distribution of the employer's assets prior to the arbitration – "would render [the arbitrator's] award meaningless, essentially frustrate the arbitration process, and effectively allow Sky Vue to escape its contractual promise to arbitrate disputes over interpretation of the collective bargaining agreement." *Sky Vue*, 759 F.2d at 1099. Precisely the same harm will result in this case if the sale is not enjoined.

While the frustration of arbitration fully satisfies the irreparable harm requirement for injunctive relief, there is further irreparable injury that would result if the sale is not enjoined. Among the terms of the collective bargaining agreement that the buyer refuses to assume is a quality health insurance plan that the employees would lose once the buyer takes over. It is well established that loss of health insurance constitutes

12

irreparable harm for purposes of an injunction in aid of arbitration. *See, e.g., Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979) ("If the risk of 'water pipes freezing' can constitute irreparable injury, ... then surely the possibility that a worker would be denied adequate medical care as a result of having no insurance would constitute 'substantial and irreparable injury.'"); *Auto Workers v. Exide Corp.*, 688 F. Supp. 174, 187-88 (E.D. Pa. 1988) (enjoining reduction in health insurance benefits pending arbitration), *aff'd mem.*, 857 F.2d 1464 (3d Cir. 1988). Irreparable injury has been established beyond dispute.

### E. The Balance of Hardships Tips Decidedly in Favor of Injunctive Relief.

"The final equitable prerequisite to the issuance of a status quo injunction is a finding that the union will suffer more from the denial of an injunction than will the employer from its issuance." *Panoramic*, 668 F.2d at 288. Here, the harm that the Union and its members would suffer in the absence of an order enjoining the sale is overwhelming. Denial of injunctive relief would "essentially allow [defendants] to escape [their] contractual obligation to arbitrate disputes," *Sky Vue*, 759 F.2d at 1099, concerning this important provision. Denial of injunctive relief would result in the Union members' loss of their health insurance coverage at a time when health care workers are at extreme risk of serious medical conditions and consequences. Also among the terms and conditions that the buyer refuses to assume is paid sick leave, which is critically important at this time as it avoids forcing health care workers to

13

choose between supporting their families and taking every precaution to prevent spread of the virus to patients and coworkers.

The Union is seeking to stay the proposed sale only until the arbitration process is completed, and has sought to expedite the process. In fact, the hearing is scheduled to take place at noon on April 30. Given that it was the Defendants who failed to timely disclose the nature of the planned transfer of operations in violation of the CBA, they should not now be heard to complain that they are not required to maintain the status quo while the dispute is resolved according to the parties' agreed upon dispute resolution process.

For all of these reasons, the balance of hardships weighs very heavily on the side of the Union, and the equities are even more lopsided if the public interest is considered. The sale must be enjoined until the arbitrator has heard and fully resolved this dispute.

14

**CONCLUSION**

For the reasons set forth above and in the supporting declarations, the Union urges the Court to issue an order

(1) restraining Defendants from selling or transferring Cranford or RRE or taking any irreversible step toward sale or transfer before the issuance and effectuation of the arbitrator's final award concerning the sale;

(2) requiring Defendants to maintain the status quo ante until the issuance and effectuation of the arbitrator's final award concerning the sale; and

(3) granting such other and further relief as the Court may deem just and proper.

Dated: April 29, 2021

GLADSTEIN, REIF & MEGINNISS LLP

By: _____*s/ Katherine H. Hansen*_____

Katherine H. Hansen
William S. Massey
39 Broadway, Suite 2430
New York, New York 10006
(212) 228-7727
khansen@grmny.com
wmassey@grmny.com

Attorneys for Plaintiff

15