**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| 1199 SEIU,<br><br>                     Plaintiff,<br><br>     v.<br><br>CRANFORD REHAB AND NURSING CENTER, *et al.*,<br><br>                     Defendants. | Case No. 21-cv-10472 (BRM)(CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are three motions. The first motion is Plaintiff 1199 SEIU's ("Plaintiff" or the "Union") Motion for Preliminary Injunction restraining Defendants Cranford Rehab and Nursing Center ("Cranford") and Rehab at River's Edge ("RRE") (collectively, "Defendants") from selling or transferring their nursing home facilities and requiring Defendants to maintain the status quo until a final decision concerning the sale from an arbitrator. (ECF Nos. 2, 3.) The second motion is Plaintiff's Motion to Confirm Arbitration Award. (ECF No. 11.) Defendants opposed (ECF No. 16),[1] and Plaintiff replied (ECF No. 18).[2] The third motion is Defendants' Cross-Motion for Declaratory Judgment. (ECF No. 16.) Having reviewed the submissions filed in connection with the motions and having held oral argument pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause having been shown, Plaintiff's Motion for a Preliminary Injunction is **DENIED**, Plaintiff's Motion to Confirm Arbitration Award is **DENIED**,

---

[1] Included within Defendants' Opposition Brief was opposition to Plaintiff's Motion for an Order to Show Cause. (*See* ECF No. 16-26 at 18–22.)

[2] Included within Plaintiff's Reply Brief was a reply to Defendants' opposition to Plaintiff's Motion for an Order to Show Cause. (*See* ECF No. 18 at 8–10.)

and Defendants' Cross-Motion for Declaratory Judgment is **GRANTED IN PART and DENIED IN PART**.

I.  **BACKGROUND**

   A.  **Factual Background**

Cranford and RRE are for-profit corporations that operate nursing homes in Cranford and Raritan, New Jersey, respectively. (Am. Compl. (ECF No. 10) ¶¶ 3–4.) Plaintiff "is a labor organization . . . and the collective bargaining representative of the licensed practical nurses, certified nursing assistants, and housekeeping, dietary, and laundry employees employed by Cranford, and the certified nursing assistants, and housekeeping, dietary, and laundry employees employed by RRE." (*Id.* ¶ 5.)

On March 13, 2008, Plaintiff and several nursing home employers entered into a collective bargaining agreement that established, *inter alia*, the wage, hour, leave of absence, and health insurance terms for Union employees (the "First CBA"). (*See generally* Decl. of Katherine H. Hansen in support of Mot. to Confirm, Ex. D (ECF No. 11-5).) The First CBA included a provision ("Article 32"), which stated:

> This Agreement shall be binding upon the parties hereto, their successors and assigns, and shall apply to all establishments now or hereafter owned, operated, or controlled by the Employer. If the Employer shall sell, transfer, or otherwise dispose in whole or in part of its business, merge or consolidate it with that of any other person, firm or corporation, the Agreement by which such sale, transfer, assignment, subletting, disposition, merger or consolidation is made must provide that the person, firm or corporation thereafter to operate the business shall assume all of the terms and conditions of this Agreement, that it shall retain in its employ all employees then employed in the business; that the person, firm or corporation that thereafter operates the business shall be personally responsible for all unpaid wages, all fund payments, vacations, holidays, sick leave and all other monetary items. The Employer shall give prior notice

> of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc [sic] of the operation covered by this Agreement, or any part thereof. Such notice shall be in writing and a copy served upon the Union at the time the seller, transferor or lessor executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, excluding financial details. In the event the Employer fails to require the purchaser, transferee or lessee to assume the obligations of this Agreement, the Employer shall be liable to the Union and the employees covered, for all damages sustained as a result of such failure to require assumption of the terms of this Agreement. Any dispute of whatsoever kind or nature arising under this Article shall be subject to the arbitration procedure herein, and the Arbitrator has jurisdiction to determine the same and issue a decision awarding any sums of money and damages.

(*Id.* at 27–28; *see also* ECF No. 10 ¶ 7.) The First CBA was to remain effective until February 28, 2013. (ECF No. 11-5 at 28.) On November 7, 2012, in anticipation of the First CBA's expiration, Plaintiff invoked a provision which allowed disputed renewal terms to be submitted to an arbitrator. (Hansen Decl., Ex. C (ECF No. 11-4) at 2; *see also* ECF No. 11-5 at 28.) The arbitrator's award amended the First CBA in several areas, including wage and benefit fund terms, but otherwise held the First CBA—including Article 32—was to remain in full force and effect (the "Second CBA"). (ECF No. 11-4 at 20–22.) The Second CBA was to be effective from March 1, 2012 through June 30, 2016. (*Id.* at 20.)

On February 17, 2017, Plaintiff and Cranford entered into a Memorandum of Agreement which stated the Second CBA shall continue in full force and effect, with several modifications, from July 1, 2016 through April 30, 2018 (the "Third CBA"). (*See generally* Hansen Decl., Ex. B (ECF No. 11-3).) Article 32 was not modified and, therefore, remained in full force and effect.

3

(*Id.*) In 2018,[3] Plaintiff, Cranford, and RRE entered into a Memorandum of Agreement in which the parties agreed "all of the terms and conditions and language of [the Third CBA] are renewed and remain in full force and effect except] for several modifications" (the "Fourth CBA"). (ECF No. 11-2 at 1.) The Fourth CBA was to remain in effect from its ratification through June 30, 2021. (*Id.*) Once again, Article 32 was not modified. (*See generally id.*)

Plaintiff alleges it was notified by an employee on April 12, 2021 that Cranford was to be sold. (ECF No. 10 ¶ 11.) That same day, Plaintiff emailed Noah Siegel ("Siegel"), corporate counsel to Defendants' parent company, to confirm whether Cranford was going to be sold and, if so, request information regarding the sale. (*Id.* ¶ 12; ECF No. 11-6 at 2–3.) Plaintiff also reminded Siegel of Article 32's requirements in the event of a sale. (ECF No. 10 ¶ 12; ECF No. 11-6 at 3.) Plaintiff asserts it subsequently received a letter from Cranford's administrator on April 13, 2021 "stating that there would be 'a change in management' at both Cranford and RRE effective May 1, 2021, and that they were looking to have a 'seamless transition.'" (ECF No. 10 ¶ 13; *see also* ECF No. 11-7.)[4]

Plaintiff asserts it received letters from attorney Lou Capozzi ("Capozzi") on April 28, 2021, "advising that he had been retained to represent the 'potential new Operator'" of Cranford and RRE, "that there was to be a takeover of each facility 'in the near future' and that

---

[3] The Fourth CBA contains only one date stamp indicating the agreement's effective date. (*See* Hansen Decl., Ex. A (ECF No. 11-2) at 3.) The date is November 19, 2018 and located below RRE's counsel's signature. (*Id.*) In a declaration, Plaintiff also asserts the Fourth CBA was "effective from on or about November 19, 2018." (ECF No. 1-1 ¶ 5.)

[4] Defendants deny this assertion and, instead, maintain a Cranford administrator "sent correspondence to the Union stating that effective May 1, 2021, Cranford [and RRE] will be under the management of Atlas Healthcare." (ECF No. 15 ¶ 13.)

each new Operator would not be honoring the terms of the Fourth CBA with the Union." (*Id.* ¶ 16.) According to Plaintiff, "[t]he letters announced significant changes in the employees' terms and conditions of employment and did not state that the new Operators would retain the bargaining unit employees." (*Id.*; *see also* Hansen Decl., Ex. H (ECF No. 11-9), Ex. I (ECF No. 11-10).)[5] That same day, Plaintiff emailed Siegel requesting, by the next day, all information pertaining to the sale. (ECF No. 10 ¶ 17; Hansen Decl., Ex. J (ECF No. 11-11) at 2.) Plaintiff also requested an expedited arbitration hearing to address this matter. (ECF No. 10 ¶ 18; Hansen Decl., Ex. K (ECF No. 11-12) at 3–4.) On April 29, 2021, Plaintiff filed a Complaint against Defendants, along with a request for injunctive relief. (ECF Nos. 1–3.)

Arbitrator Timothy J. Brown (the "Arbitrator") held a hearing on April 30, 2021. (ECF No. 10 ¶ 21.) Following the hearing, the Arbitrator issued an Interim Injunctive Award (the "Interim Award") directing Defendants to

> not enter into a sale or sales of their enterprise(s), in whole or in part, to any purchaser, unless the related agreement(s) of sale or transfer requires said purchaser(s) to adhere to the terms and provisions of employment contained in the [Fourth CBA] between [Defendants] and the Union and to retain all employees currently working at the facilities.

(Hansen Decl., Ex. M (ECF No. 11-14) at 6.) The Arbitrator noted the Interim Award was based upon several factors, including "preserving the *status quo* until more details and facts may be established and presented," "understanding the interest of counsel for [Defendants] to refrain from making any firm representations as to facts and positions of his clients under circumstances where

---

[5] Defendants deny this assertion, "except . . . that on April 28, 2021, . . . Capozzi . . . sent correspondence to the Plaintiff on behalf of 'potential new Operator(s)' regarding terms and conditions of employment." (ECF No. 15 ¶ 16.)

5

he has not had the opportunity to fully consult with said clients," "provide the parties time to explore amicable resolution of the matter," and "permit the parties time to prepare for arbitration of the matter, if needed." (*Id.* at 4–5.)[6] The Arbitrator, "[i]ntending not to preclude any court from enforcement of the above [Interim] Award," "retain[ed] jurisdiction of this matter should the parties have further issues to resolve within the jurisdiction of the arbitrator." (*Id.*) "Further hearing on the matter" was to "be scheduled by the [Arbitrator] at the request of either party." (*Id.*) Plaintiff subsequently informed the Court of the Interim Award and agreed with the Court that, in light of the same, its request for injunctive relief was moot. (Hansen Decl., Ex. N (ECF No. 11-15) at 2–3.)

On May 5, 2021, counsel for Defendants indicated their clients understood and intended to fully comply with the Interim Award, and "[i]n the interim, . . . [would] continue to abide by the terms and conditions of the existing CBAs." (Hansen Decl., Ex. O (ECF No. 11-16) at 3.) Counsel for Defendants also maintained "terms and conditions could be changed based upon whatever is agreed to between the parties in a new collective bargaining agreement as the current agreement expires on June 30, 2021." (*Id.* at 2.)

On June 30, 2021, Plaintiff received a letter from Defendants' counsel stating the Fourth CBA expired at the end of the day and, "[a]t that time, all contractual obligations . . . will expire." (Hansen Decl., Ex. P (ECF No. 11-17) at 2.) Defendants' counsel indicated, at the time of

---

[6] The Arbitrator noted in the award it was represented to him at the hearing that the attorney assisting Defendants with the matter was unable to attend due to the short notice, Defense counsel in attendance had not had an opportunity to fully consult with Defendants, Defendants' representatives were unable to represent or provide evidence relating to the full nature of the planned transfers or the closing date of the transfers, and counsel had requested a continuance. (*Id.* at 3.)

6

expiration, Defendants would "disavow[], revoke[], and repudiate[]" the terms of the Fourth CBA. (*Id.*) The letter also indicated Defendants would "continue to observe all established wages, hours, and terms of employment as required by law, except[] those recognized by law as strictly contractual." (*Id.*) Finally, Defendants' counsel asserted, "[w]ith respect to arbitration, . . . effective July 1, 2021, at 12:01 am, the grievance procedure . . . of the [Fourth] CBA is terminated and of no further force or effect." (*Id.*)

On July 15, 2021, Plaintiff received a letter from Defendants' counsel stating Defendants had entered into a contract with Cranford SNF LLC and Rivers Edge SNF LLC (the "Purchasers") "for the transfer of management of [Defendants'] operations." (Hansen Decl., Ex. Q (ECF No. 11-18) at 2.) Defendants' counsel informed Plaintiff "[t]he closing on this transaction is tentatively scheduled to take place on or about August 1, 2021," and "any Union-represented employee of the Employer working at either of these two locations who is offered and accepts employment with one of the [Purchasers] will become an employee of that [Purchaser]." (*Id.*)

### B.  Procedural History

On April 29, 2021, Plaintiff filed their Complaint against Defendants seeking injunctive relief pursuant to 29 U.S.C. § 185. (ECF No. 1 ¶ 23.) That same day, Plaintiff filed an emergency application for injunctive relief, requesting

> the Court issue an order to show cause directing Defendants . . . to show cause why a preliminary injunction should not be entered restraining Defendants from selling or transferring Cranford and RRE or taking any irreversible step toward sale or transfer before the issuance and effectuation of the arbitrator's final award concerning the sale, and requiring Defendants to maintain the *status quo ante* until the issuance and effectuation of the arbitrator's final award concerning the sale, and that the Court temporarily restrain Defendants from the acts sought to be preliminarily enjoined,

7

>pending the hearing of Plaintiff's motion for a preliminary injunction.

(ECF No. 2 at 1–2; *see also* ECF No. 3.) On May 3, 2021, the Court, "having been advised arbitration was held on April 30, 2021, and an arbitration award was entered enjoining the sale," administratively terminated Plaintiff's emergency application as moot. (ECF No. 4.)

Following the Fourth CBA's expiration and Defendants' July 15, 2021 notice to Plaintiff of the transfer of operations to the Purchasers, Plaintiff, on July 19, 2021, requested the Court reinstate its emergency application. (ECF No. 6.) At a July 21, 2021 status conference, Defendants agreed "to delay the effectuation of the transfer of the nursing homes until September 13, 2021." (ECF No. 10 ¶ 26; *see also* ECF No. 9 at 16:6-15.) On August 11, 2021, Plaintiff filed a Motion to Confirm Arbitration Award. (ECF No. 11.) That same day, Plaintiff filed an Amended Complaint against Defendants seeking "to enforce [the Interim Award] and to maintain the status quo ante pending arbitration pursuant to [the Fourth CBA]." (ECF No. 10 ¶ 1.)

On August 16, 2021, the Court reinstated Plaintiff's application for injunctive relief. (ECF No. 14.) On August 23, 2021, Defendants filed opposition to Plaintiff's Motion to Confirm Arbitration Award. (ECF No. 16.) Defendants also filed a Cross-Motion for Declaratory Judgment, requesting the Court declare: (1) the Fourth CBA had expired as of June 30, 2021; (2) Article 32 no longer has force or binding effect; (3) the Arbitrator's Award is dismissed in its entirety; and (4) the Arbitrator's authority to hear and resolve matters related to the Fourth CBA had expired as of June 30, 2021. (*See* ECF No. 16-27.) On August 31, 2021, Plaintiff filed a reply. (ECF No. 18.) On September 9, 2021, the Court held oral argument on these issues. (ECF No. 23.) Following oral argument, the Court directed the parties to engage in good faith settlement discussions and administratively terminated Plaintiff's Motion to Confirm Arbitration Award and Defendants'

8

Cross-Motion for Declaratory Judgment with a right to reinstate the motions upon a letter application to the Court. (ECF No. 24.) On April 15, 2022, the parties wrote to the Court to advise that the matter had not settled and to request the motions be returned to active status and the continuation of oral argument be scheduled. (ECF No. 34.) With the Court's permission, the parties submitted supplemental briefs in support of their motions. (ECF Nos. 35–39.) The Court held oral argument on June 30, 2022. (ECF No. 40.)

## II.     LEGAL STANDARD

### A.     Preliminary Injunction

Under the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, courts are prohibited from providing equitable relief "in cases involving labor disputes." *Indep. Oil Workers Union v. Mobil Oil Corp.*, 777 F. Supp. 391, 393 (D.N.J. 1991). This prohibition is not absolute. In *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235 (1970), the Supreme Court held that federal courts may enjoin a labor union's strike where a collective bargaining agreement contemplates arbitration of the dispute that occasions the strike. *Id.* at 237–38, 253–254. Accordingly, so-called *Boys Market* injunctions permit courts to enjoin certain conduct "in order to preserve the status quo in aid of arbitration." *Indep. Oil Workers Union*, 777 F. Supp. at 393 (citing *Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397 (1976); *Boys Markets, Inc.*, 398 U.S. 235; *Nursing Home & Hosp. Union No. 434 v. Sky Vue Terrace, Inc.,* 759 F.2d 1094, 1098 (3d Cir. 1985) ("[A] *Boys Markets* injunction is appropriate only where necessary to prevent conduct that threatens or frustrates the arbitral process agreed to by the parties . . . ."); *Lever Bros. Co. v. Int'l Chem. Workers Union, Local 217,* 554 F.2d 115, 123 (4th Cir. 1976)).

A party seeking a *Boys Market* injunction must demonstrate that (1) the underlying dispute is arbitrable, and (2) the probability of success on the merits, irreparable injury, and a balance of the hardships support the issue of an injunction. *Sky Vue*, 759 F.2d at 1098; *see Indep. Oil Workers Union*, 777 F. Supp. at 393.

### B. Motion to Confirm Arbitration Award

"There is a strong presumption under the Federal Arbitration Act [("FAA")], 9 U.S.C. § 1, *et seq.*, in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "As such, an award is presumed valid unless it is affirmatively shown to be otherwise, and the validity of an award is subject to attack only on those grounds listed in 9 U.S.C. § 10, or if enforcement of the award is contrary to public policy." *Id.* (citations omitted). Under Section 10, an award may be vacated where: (1) "the award was procured by corruption, fraud, or undue means;" (2) "there was evident partiality or corruption in the arbitrators, or either of them;" (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. "The party seeking to overturn an award bears a heavy burden, as these are 'exceedingly narrow circumstances,' and courts accord arbitration decisions exceptional deference." *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d Cir. 2010) (citation omitted); *see also Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003).

### III. DECISION

#### A. Plaintiff's Request for Injunctive Relief

Plaintiff filed an Emergency Application for an Order to Show Cause with Temporary Restraining Order on April 29, 2021[7] (ECF Nos. 2, 3), which the Court reinstated on August 16, 2021. (ECF No. 14.) In that application, Plaintiff requested the Court "temporarily restrain[] and enjoin [Defendants] from selling or transferring Cranford and RRE or taking any irreversible step toward sale or transfer . . . until the issuance and effectuation of a final award of the arbitrator." (ECF No. 2-1 at 1–2.) Accordingly, for an injunction to issue, Plaintiff must demonstrate it has satisfied both *Boys Market* conditions, *i.e.*, arbitrability and necessity of an injunction under ordinary principles of equity.

##### 1. Arbitrability

Article 11 of the First CBA provided "a grievance shall be defined as a dispute with regard to the application, interpretation or performance of an express term or condition of the Agreement." (ECF No. 11-5 at 7.) Article 11 further stated any unresolved grievances may be submitted to an arbitrator for "final and binding resolution." (*Id.* at 8.) The amendments agreed upon in the Second CBA, Third CBA, and Fourth CBA did not remove this arbitration provision. (*See generally* ECF Nos. 11-2 (amendments only addressing "adverse inference due to the failure of a resident or family member to appear at an arbitration hearing" and the names of contract arbitrators), 11-3 (amendments only addressing the arbitrator selection procedure), 11-4.) Article 11, therefore, remained part of the Fourth CBA as a mechanism to resolve issues over "the application, interpretation or performance" of express terms—such as Article 32—of the Fourth CBA. *See Sky*

---

[7] Plaintiff's accompanying Moving Brief requests a preliminary injunction. (*See* ECF No. 3.)

*Vue*, 759 F.2d at 1097 (rejecting argument that dispute over a successors and assigns clause fell outside the parties' collective bargaining agreement arbitration clause because "the contractual definition of grievance include[d] 'any dispute between the parties involving interpretation or application of any provisions of this Agreement,' and thus explicitly encompasse[d] the present dispute over the meaning of the agreement's successors and assigns clause").

In its April 29, 2021 application, Plaintiff defined the parties' grievance as a dispute over whether Defendants violated Article 32 of the Fourth CBA by failing to require the prospective owner to assume the Fourth CBA's terms and argued the issue was arbitrable under Article 11 of the Fourth CBA. (ECF No. 3 at 7–9.) The Fourth CBA, however, expired on June 30, 2021 (*see* ECF No. 11-2 ¶ 1), and Plaintiff's application does not address post-expiration arbitrability (*see generally* ECF No. 3). In its August 11, 2021 motion to confirm the Interim Award, Plaintiff defines the dispute as one over the "facts and occurrences that arose before expiration,' . . . specifically the new operators' selective enlistment of bargaining unit employees in April for a May 1 takeover and their April 28 announcement of new, inferior terms of employment, all of which occurred before expiration." (ECF No. 18 at 6 (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205–06 (1991)).)[8] Defendants contend the current dispute relates to events occurring, if at all, months after expiration of the Fourth CBA. (ECF No. 16-26 at 15–16.)

"[A]n arbitration clause does not generally continue in effect after a CBA expires." *Durham Life Ins. v. Evans*, 166 F.3d 139, 159 n.15 (3d Cir. 1999). "But, where a dispute arises

---

[8] Because Plaintiff's Motion for an Order to Show Cause was filed before the Fourth CBA's expiration, Plaintiff's briefing does not address this issue. The Court, therefore, refers to the parties briefing for Plaintiff's Motion to Confirm Arbitration Award.

12

under an expired agreement, the duty to arbitrate continues to be in effect unless it is 'negated expressly or by clear implication.'" *United Steel, Paper & Forestry Rubber Mfg., Energy Allied Indus. & Serve Workers Int'l Union v. Cambrex, Inc.*, Civ. A. No. 09-2712, 2009 WL 3763896, at *4 (D.N.J. Nov. 10, 2009) (quoting *Nolde Bros. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977) (citing *Durham*, 166 F.3d at 159 n.15)). A dispute can be said to arise under an expired agreement under only three circumstances: (1) "where it involves facts and occurrences that arose before expiration," (2) "where an action taken after expiration infringes a right that accrued or vested under the agreement," or (3) "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton*, 501 U.S. at 205–06 (emphasis added).

Plaintiff's April 29, 2021 application for an order to show cause sought to enjoin a "May 1 takeover," *i.e.*, a sale of the facilities set to occur prior to the expiration of the Fourth CBA. (ECF No. 3 at 4; ECF No. 3-10 at 11; *see also* ECF No. 18 at 6.) It is undisputed such grievance was arbitrable, and indeed Plaintiff filed a demand for arbitration of that grievance, resulting in the issuance of the Interim Award on April 30, 2021 and the prohibition of the May 1, 2021 takeover. (ECF No. 11-14). The Interim Award thereby acted as a preliminary injunction, mooting the issue then-pending before the Court. The status quo was preserved through expiration of the Fourth CBA.

Now, more than one year after the Fourth CBA expired, Defendants have yet to sell their facilities. The "facts and occurrences" of the *current* dispute involve the application of Article 32 of a now-expired Fourth CBA on any future sale. The Court finds this particular grievance did not

arise before the expiration of the Fourth CBA.[9] Accordingly, Plaintiff has not satisfied the first prong of the *Litton* test. *See Litton*, 501 U.S. at 205–06.

Because Plaintiff argues the dispute arose before expiration (ECF No. 18 at 9 ("the dispute arose before expiration"), Plaintiff does not claim any action taken *after* the expiration of the Fourth CBA infringes a vested or accrued right. Accordingly, the dispute is not arbitrable under the second prong of *Litton*. Nor does Plaintiff claim the arbitration clause or the successors and assigns clause survives expiration of the Fourth CBA under normal principles of contract interpretation, and therefore the dispute is not arbitrable under the third prong of *Litton*. Consequently, the present dispute is not arbitrable. *See Basketball Mktg. Co. v. Urbanworks Entm't*, Civ. A. No. 04-3179, 2004 U.S. Dist. LEXIS 22966, at *19–24 (E.D. Pa. Nov. 10, 2004) (holding a dispute was not arbitrable where the court found no factual support that the plaintiff's claims "arose" under an agreement, the claims did not seek to vindicate rights that accrued or vested under the agreement, and the claims did not involve a right that survived the expiration of the agreement).

To the extent Plaintiff claims the current dispute is arbitrable by virtue of the Interim Award, the argument fails. The Third Circuit's recent decision in *Pittsburgh Mailers* held that if an arbitration clause does not have its own durational clause, the durational clause of the Fourth CBA applies and the clause expires upon the expiration of the Fourth CBA. *Pittsburgh Mailers*

---

[9] It appears Defendants seek to transfer Cranford and RRE to the same potential purchaser involved with the proposed May 1, 2021 takeover. Plaintiff claims negotiations or agreements with the potential purchaser occurring prior to the expiration of the Fourth CBA serve as a basis to enjoin any future sale. The Court is not persuaded mere negotiations or an agreement to sell that did not come to fruition prior to the expiration of the Fourth CBA can serve as a basis to find the current dispute "arises" under the Fourth CBA.

14

*Union Local 22 v. PG Publ'g Co.*, 30 F.4th 184, 188 (3d Cir. 2022). The Third Circuit explained that arbitration provisions are contractual and, pursuant to Supreme Court directives, courts "must apply ordinary contract principles in determining whether a contractual provision in a CBA survives the expiration of the CBA." *Id.* (citing *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015); *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 762 (2018)). Here, neither Article 11 nor Article 32 contain their own durational clauses. According to ordinary contract principles and consistent with *Pittsburgh Mailers'* instructions, the clauses expired on June 30, 2021. The Interim Award entered prior to the Fourth CBA's expiration does not extend the clauses' duration to this post-CBA dispute.

### 2. Principles of Equity

Because the present dispute is not arbitrable, Plaintiff has not satisfied the first condition required for a *Boys Market* injunction to issue. Accordingly, the Court need not consider whether issuance of an injunction would be warranted under ordinary principles of equity. *See Auto-Marine Terminal v. Marine Warehouseman Div., Local 1588*, Civ. A. No. 08-2789, 2008 U.S. Dist. LEXIS 52647, at *6 (D.N.J. July 8, 2008) (declining to issue an injunction where the plaintiff had not shown the threshold requirements set forth in *Boys Market*); *Elsinore Shore Assocs. v. Local 54, Hotel Emps. & Rest. Emps. Int'l Union*, 820 F.2d 62, 69 (3d Cir. 1987) (vacating portion of preliminary injunction entered on non-arbitrable dispute); *see also Purex Corp. v. Auto., Petroleum & Allied Indus. Emps. Union*, 705 F.2d 274, 277 (8th Cir. 1983) (explaining the district court could have rested its denial of injunctive relief solely on the finding that the dispute was not arbitrable); *Amalgamated Council of Greyhound Div. v. Greyhound Lines, Inc.*, Civ. A. No. C82-2371A, 1982 U.S. Dist. LEXIS 17415, at *5 (N.D. Ga. Nov. 8, 1982) ("Where the underlying dispute is not

15

arbitrable, . . . a *Boys Market* injunction was unnecessary to enforce the promise to submit contract disputes to arbitration."). However, even if the Court were to conclude the current dispute was arbitrable, Plaintiff has not demonstrated an injunction is necessary under ordinary principles of equity.

The Court's conclusion finds support in the decision of the Honorable Susan D. Wigenton, U.S.D.J., in *1199 SEIU United Healthcare Workers East v. Windsor Gardens Care Center, Inc.,* in which she addressed circumstances bearing a striking resemblance to those before this Court. *See* Civ. A. No. 21-09170, Order (ECF No. 23) (D.N.J. Apr. 26, 2021). In *Windsor Gardens*, the defendant planned to sell a nursing facility to a prospective third-party buyer. (Civ. A. No. 21-09170, Pet. (ECF No. 1) ¶ 16.) Plaintiff sought and obtained an arbitration award, *ex parte*, preventing the sale unless the sales agreement required the purchaser to assume the terms and conditions of the collective bargaining agreement. (*Id.,* ECF No. 1 ¶¶ 23, 48.) Plaintiff then commenced an action by way of a petition to confirm the award and simultaneously moved for a preliminary injunction pending a ruling on the petition. (*Id.*, ECF Nos. 1, 4.) Like Plaintiff argues here, Plaintiff contended the relief was warranted in *Windsor Gardens* to prevent loss of health insurance, pension, employment, and other protections the Union achieved through collective bargaining (*id.*, ECF No. 8 at 17), but Judge Wigenton found such losses appeared quantifiable, doubted the likelihood of success in confirmation of the *ex parte* award, and denied the application for preliminary injunction (*id.*, ECF No. 24). The Court can find no basis upon which to distinguish Plaintiff's argument here from the argument rejected by Judge Wigenton in *Windsor Gardens*.[10]

---

[10] Although the April 30, 2021 hearing before the Arbitrator in this case was not *ex parte* in the ordinary sense, it was held with something less than a complete presentation from Defendants. The Arbitrator specifically noted the Interim Award was entered in the interest of "preserving the status

In summary, Plaintiff's motion for a preliminary injunction is **DENIED**.

B.   **Plaintiff's Motion to Confirm Arbitration Award**

Plaintiff seeks confirmation of the Interim Award.[11] (ECF No. 11.) "Federal courts commonly understand . . . the FAA to allow review of final arbitration awards but *not* of interim or partial rulings." *Marron v. Snap-On Tools, Co.*, Civ. A. No. 03-4563, 2006 WL 51193, at *1 (D.N.J. Jan. 9, 2006) (collecting cases). "This finality rule advances the policy of promoting arbitration as an expeditious alternative to traditional litigation, and adheres to the Third Circuit's admonition that courts exercise the utmost restraint and . . . tread gingerly before intruding upon the arbitral process." *Id.* at *2 (internal quotation marks and citations omitted).

In support of its Motion, Plaintiff argues the Interim Award is "a final award on the merits and as an interim *status quo* order, the Award is properly subject to judicial enforcement." (ECF No. 12 at 8.) In opposition, Defendants argue the Interim Award "was not a final award" (ECF No. 16-26 at 12), and maintain it "could not be clearer that it was intended to, among [other] things, 'preserv[e] the *status quo* until more details and facts may be established and presented to the [Arbitrator]; and . . . permit the parties time to prepare for arbitration of the matter, if needed'" (*id.* at 11 (quoting ECF No. 11-14 at 4–5)).

---

quo until more details and facts may be established and presented," based in part on his understanding that Defendants' counsel was not the attorney assigned to the matter, appearing only due to the exigent circumstances and with limited opportunity to fully consult with his clients.

[11] Plaintiff filed an Emergency Application for an Order to Show Cause with Temporary Restraining Order. (ECF Nos. 2.) Plaintiff's accompanying Moving Brief requests a preliminary injunction. (*See* ECF No. 3.) In its supplemental brief, Plaintiff contends confirmation of the Award would render its separate request for injunctive relief moot. (ECF No. 37 at 8.)

By the Arbitrator's own words, the Interim Award was issued: (1) despite the absence of a complete recitation of "details and facts" and (2) without Defendants' "making any firm representations as to facts and positions." (ECF No. 11-14 at 4–5.) Moreover, the Interim Award was issued in an effort "to permit the parties time to prepare for arbitration of the matter, if needed." (*Id.* at 5.) Finally, the Arbitrator issued the Interim Award "without prejudice to the rights of either party established by contract or law" (*id.*), and retained jurisdiction over the matter "should the parties have further issues to resolve within the jurisdiction of the arbitrator" (*id.* at 6). Coupled with the fact that Defendants' counsel attended the arbitration hearing "on an emergency basis and was not a labor lawyer" (*id.* at 3 ("The representative of [Defendants] were, at the time of the hearing, unable to represent or provide evidence relating to the full nature of the planned transfers, or the exact closing date of the subject transfers.")), the Court cannot discern how the Interim Award demonstrates the finality necessary for this Court's review. *See IDS Life Ins. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001) ("We take 'mutual' and 'final' to mean that the arbitrators must have resolved the entire dispute (to the extent arbitrable) that had been submitted to them . . . ."). Accordingly, Plaintiff's motion to confirm the Interim Award is **DENIED**.

### C.  Defendants' Motion for Declaratory Judgment

Defendants cross-move for declaratory relief, requesting the Court declare: (1) the Fourth CBA expired as of June 30, 2021; (2) Article 32 no longer has force or binding effect; (3) the Arbitrator's Award is dismissed in its entirety; and (4) the Arbitrator's authority to hear and resolve matters related to the Fourth CBA had expired as of June 30, 2021. (*See* ECF No. 16-27.)

18

It is well-established the Declaratory Judgment Act gives courts discretion to determine "whether and when to entertain [such] an action." *Wilton v. Seven Falls*, 515 U.S. 277, 282 (1995); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (explaining the Declaratory Judgment Act "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants") (internal quotation marks omitted); *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command."). As the Supreme Court has stated:

> The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), not that it must do so. This text has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, n.17 (1993); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494–496 (1942). We have found it "more consistent with the statute," however, "to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton*, *supra*, at 289.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). Determination as to whether to exercise this discretion is guided by the Court's sense of "practicality and wise judicial administration," *Wilton*, 515 U.S. at 287–88, and numerous other factors such as "whether it would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of 'procedural fencing'; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided." *Hanes*

19

*Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 892 F.2d 1066, 1072 (D.C. Cir. 1990).

Here, the Court finds declaratory judgment is warranted with respect to the expiration of the Fourth CBA, as the parties do not dispute the Fourth CBA expired as of June 30, 2021. However, the Court also finds practical considerations counsel it to refrain from exercising its authority to issue a declaratory judgment as to the remaining issues. Defendants seek too broad a declaration of non-arbitrability of post-expiration disputes simply because Defendants wish to preclude Plaintiff from interfering with the sale of Cranford and RRE. Matters related to finalization of the Interim Award or other arbitrable disputes are to be decided in arbitration. Accordingly, Defendants' Cross-Motion is **GRANTED IN PART** and **DENIED IN PART**.

IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction (ECF Nos. 2, 3) is **DENIED**, Plaintiff's Motion to Confirm Arbitration Award (ECF No. 11) is **DENIED**, and Defendants' Cross-Motion for Declaratory Judgment (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

Date: July 22, 2022    */s/ Brian R. Martinotti*
                                          HON. BRIAN R. MARTINOTTI
                                          UNITED STATES DISTRICT JUDGE